Good morning and may it please the court. Andrew Talai on behalf of defendant appellant Jose Luis Nunez. With the court's permission I'd like to focus on the Fourth Amendment issues today. I'd also like to reserve two minutes for a rebuttal and I'll keep an eye on the clock. Okay, thank you. To affirm this court must reach three extraordinary conclusions. First, that officers may conduct a protective sweep of a home predicated on an arrest that occurred a second, that officers may possess reasonable suspicion based on a lack of information or mere uncertainty. And third, that officers may routinely sweep through a separate or detached bedroom from which no person could oppose the threat. Because those propositions are unsustainable on this record and under the law, the court should reverse. So it appears that Nunez senior was unable to confirm to the officers on after he and Rivera exited, coupled with the fact that Godino left a gun in the house. Why wasn't this enough to give the officers reasonable suspicion that an armed individual might still be in the house? Sure, Your Honor. So a couple of points there. So the first one is, what did Mr Nunez's father say, Mr Nunez senior? The only evidence we have of that in the record is that ER 203 and it's a secondhand account. It's not a quote from Mr Nunez senior. All it says is that he couldn't say for certain. So we don't know exactly what that means. That could have been 95% certain. We just don't know. I know, but you can be shot by the 5% that's still in the house. If you can't say no one's in there. Understood. Understood. But in addition to that, I would say, as you pointed out in our briefs, a lack of information is not sufficient to establish reasonable suspicion. And it's easy to understand why when you look at Bowie. So in Bowie, the court said that the officers must possess specific and articulable facts. And the reason for that is because if you were able to just say, well, we don't know if somebody's inside the house, then you'd be able to conduct a protective sweep in every case because it's always possible. Counsel, by the way, I view the record. It seemed to me that the officers had at least some background information about the individuals that were in and around the that they all had some sort of gang affiliation. They're pursuing someone who abandons a firearm. And why isn't that enough in order to, uh, have this protective sweep occur? Because it seems to me that they at least had some familiarity with what that vicinity was like. And the affiliated gang individuals that were in and around the premises. Thank you, Your Honor. I'm happy to answer that. Just one last point I wanted to make on what Mr Nunez Senior said. So even if he said that, well, I'm not sure if anyone's in the house, and we dispute that that's what he said. That still doesn't speak to whether a dangerous person was in the house. But to answer your honor's question, I think, you know, in addition, it's very pretty good evidence. There's a gun in the house because they see the gun going in, and then it an unattended firearm is not enough to authorize a protective sweep. A protective sweep is a search for officer safety, looking for third parties. And it's not just any third party. It's a third party who would be dangerous. But I just I just want to pivot back to that question, because I don't want to leave it unanswered. Um, so I think it's really important to know what the officers actually knew about these people. So it absolutely agree that they knew the suspect, Goudino, who ran through the house. They had a lot of experience with him, but he was apprehended a few blocks away. He was arrested. He was taken into custody. He was therefore rendered harmless. The remaining people at the scene, so Mr Nunez, Sr. All they said was that they had one encounter with him prior and that they'd heard his name before. Mr Nunez, Jr. They said that they heard his name before, but not that they had any prior encounters. And they never said a thing about Mr Rivera. So I think what you what you need would need in a circumstance like this, you know, the kind of missing facts that would give rise to reasonable suspicion are things like, Well, you know, we were doing surveillance. We saw six people into the home, but we only saw three come or we hear some noise in the house, too. Yes, Your Honor. What if? Okay, I'm just trying to play that, you know, from this standpoint, um, you know, what if someone was being held hostage in the house? If you hear like you don't really know. Understood, Your Honor. Um, you know, and then the officers don't go in and then they go in and find someone dead. I mean, it's it's kind of like darned if you do and darned if you don't. Well, Your Honor, I think it's important to, you know, remember exactly what the testimony was here. One of the deputies, Deputy Barajas, said that he heard some yelling and commotion at the outset of the incident. But the district court's specific factual finding, and that's that ER 76 is that the commotion stopped when Mr Godino left the home. And in addition to that, so it's not just the district court's finding, which is uncontested here and would need to be reversed on if only if it was clearly erroneous. It's also that the father credibly explained what the source of the noise was a trespasser had just run through his home and he was yelling at him to get out. And that's what he told the officers. The officers never question his credibility, despite having numerous opportunities to do so in their incident reports, in the warrant affidavit, in their declarations, in their testimony at the evidentiary hearing. They never said that he was incredible. So I think it's it's very hard just from that isolated fact to conclude that there was reasonable suspicion. If anything, what it shows is that the suspicion had been dispelled by the time of the sweep. Can you point me to a case that says when you have something that's so rapidly unfolding and you've got people with gang activities, you know there's that you hear a commotion, you know that there's a gun that's left behind in the house. What? Can you point me to a case saying that you have to rely on Mr Nunez that his account of the story and abandon your concern for someone else that might be held hostage or that there could be someone in the house that could shoot out at the officers in the front yard? Well, your honor, I think I don't know of a case that says you have to rely on the homeowner. I mean, this is like really fast. It's not. You know, we got people running in, running out, run to somewhere else, chasing all of that. Well, so I think so. I think what the question becomes then is what is the basis for entering the home? Okay, so I think what your honor is describing, it sounds like a very reasonable situation, but that to me sounds like exigent circumstances, and that is not an exception that's relied upon here. And in addition, as the district court explained, it wouldn't apply. And also the government would have had to show probable cause to justify the entry of a home based on exigent circumstances. But just to just to take a step back here. So I think the question that your honor is getting at is what basis do they have to enter the home? Is it enough what they saw on the scene? And so I think I think the way the parties have presented the case here is that Mr Gudino, the suspect, his arrest was the basis for the conduct of protective sleep. Now, if that's true, I don't think it's possible to say that there was reasonable suspicion of danger from that scene and to the arresting officers. If the government's position, which I don't think they've ever said in their brief, is that there was some other basis other than the arrest to conduct a protective sleep, I would say that that's inconsistent with the law, your honor. So there's a there's a case I just want to quickly read. I see I'm getting close on my time here, but there's a case. It's a opening brief, and it says Bowie offers no independent justification for entry into a residence, but only addresses the question of what police may do once lawfully inside. And so I think here the officers had no lawful basis to enter the home. They did not have consent. That's undisputed. There's no other exception that that applies here. The government has abandoned all of those no existing circumstances, no probation search, and I seem at my time. I'll give you the two minutes, but I have a question I want to ask you. There was a request to file an amicus brief. Yes, your honor. And it was not timely, number one. If it had been timely, we wouldn't be having this conversation. Apparently the government didn't object to it, but so we've all looked at it, all right? But but there's things in there that come from a hearing in front of what the LA City Council or whatever. It wasn't before the district court. Let's just What are we supposed to do with it? I mean, it's not, I don't know how. Understood. Well, obviously I can't speak for the amicus or for my friend, but I would say that obviously it does contain... Well, who's your friend? My friend on the other side, the government. Oh, okay. Okay, well that's nice that you say that. I like, I enjoy it being collegial. So I'm gonna ask him the same question. So, thank you. Mr. Butler's a friend of mine, but just to answer your question, your honor, so I think... I thought that was your friend over there. He's also, she's also my friend, but just to quickly answer your question, your honor, because I don't want to take up too much more of your time here. I think it brings the Fourth Amendment concerns to life here, right? It really drives home the need to jealously and carefully guard exceptions to a warrant requirement, particularly when you're talking about entry into the home. In addition... But can you concede, I guess, that let's just say we let it come in. It wasn't before the district court, so how can... I can't make that... I don't see how I can make that evidence to consider here. Would you agree? Well, I think we don't, we don't need the amicus brief, I think, to win, to win in this case, your honor. I think the law is extremely clear, but if your, if your honor wanted to, I think, you know, our first preference would be for an outright reverse. But if, if you want, if your honor wanted to, I think you could also remand under 28 U.S.C. 2106, as justice requires, and order the district court to, you know, have an evidentiary hearing and to, you know, reassess the motion, the denial of the motion to suppress with these new facts at play. Because I do think it at least calls into credibility that, calls into question the credibility of the deputies. You know, there are things like whether they actually heard the noises. You know, that wasn't in the incident report, which is, which is quite notable. It only came out later. Whether they actually saw a gun on... Well, I guess the thing, I guess what I would say is, isn't at any point in the government, your friend in the government, if he were to ascertain at some point that he... This is not, it wasn't subject to cross-examination. It's a whistleblower in front of the LA City Council. If, if the government were to be convinced at some point in time that there were truth to the allegations that were made, they can make motions before the court to set aside convictions. Can they not? I, I believe they could. I would, of course, welcome that. Well, I'm not but I'm just saying, I don't know how I, you know, I just don't know how I can process that. But I thank you for your answers. I'll give you two minutes on rebuttal. Thank you, Your Honor. All right. Um, we'll go to the government and maybe just because I brought up the amicus, you can just start with that if, and then go in to the other parts of it, how this fits in. Good morning. Of course, Your Honor. And good morning, Your Honors. May it please the court, Kevin Butler on behalf of the United States. To start with, the final point there that you were addressing with my friend, the allegations that are put forth in the amicus brief are not within the record, which is obvious. Uh, and it's primarily based as the court has just, as Your Honor, it's just put forth on testimony that has not withstood any sort of judicial scrutiny. So they're really unproven allegations and certainly at best undetermined. And I think if we were to go through them sort of one by one, which I don't think would be appropriate here, there is substantial evidence that a couple of the more serious allegations in the amicus brief are actually false. And to the degree they've already withstood some sort of judicial scrutiny are not true. But I think the majority of the allegations are lurid allegations against a deputy group and then testimony that's been untested about perhaps these deputies who were, um, did the protective sweep here were in that group, then lurid allegations about tattoos of the group members. And then maybe these tattoo or these these deputies were tattooed members of that group. Uh, but there are no allegations about warrantless sweeps, protective sweeps and a lot of okay. So but let me okay. It was an untimely brief, but it had been timely. It just comes in. It was untimely. But then you didn't object to it either. So what's your position at this point? You're I hear your position saying we can't consider it as part evidence that was before the district court. But what's your position about admitting it? My understanding is that is our office's policy to not object to a amicus brief, even if it is untimely filed. And, you know, although we had received a letter from defense about what those allegations might entail, I don't. We had no prior knowledge to what it would be, and I think it was our policy to allow it to come in and allow the court to consider what they are. Um, we were not positive that these were in particularly that they would not maybe pertain to either what happened on the day in question or the deputies who are at issue here themselves. Uh, either way, I think that it's were post conviction at this point, even if it is a, uh, a an appeal that or a plea that allowed them to appeal. But there are no. As your honor noted, there's things the government can do if these were founded allegations and proven as such. But there's also post conviction relief that the defendant can seek in terms of 2255 or or other motions. And again, there's been nothing filed by the appellant here in terms of what remedy they seek in light of the allegations in the amicus brief. Okay, so why don't you go to the merits then here? Sure. And I will address unless the court has other questions, the protective sweep and Fourth Amendment issues, since that's where the appellant started. I think the district court properly found a protective sweep was justified here and did so based on principles that are elucidated by this court and other courts. And those principles are that these are fact intensive inquiries with no bright line rules based on the totality of the circumstances. Courts caution against second guessing these split second decisions as your honor noted and that are known to the deputies at the time. And at that point, we only go to reasonable belief based on specific and articulable facts and reasonable suspicion is not a high standard. And here there are just so many factors that supported a couple of them already touched on. Walk me through what specific set of articulable facts justified any reasonable belief that there was a person in the in the bedroom. Absolutely. Well, I'll note one thing that that my friend already mentioned regarding the bedroom and that it was a separate bedroom. The district court found, and it's on the record, uh, in in in the record before this court that, although it was a separate bedroom with a separate entrance, the appearance from the outside, and I think this is in the record both from what the were shown to the district court and the witness on the stand is that by all accounts, it appears contiguous and contiguous with the rest of the structure. And so after the protective sweep, certainly there was the government would concede and the officers would concede at the time that they knew that there was not another entrance. But from the outside and hearing defendant Goodino go into the house commotion in the house, and then there is testimony that it was going farther back into the house, which is where that separate bedroom would be. There was no way of them knowing that there wasn't a door, a crawlspace, some sort of hallway, some access to that separate bedroom. But as far as the articulable facts regarding someone being in the house itself, they knew that they had encountered defendant Goodino, who they had previous experience with, including previous experience with the firearm running through a house. They knew he was armed, not a furtive movement, not, uh, holding their waistband or something like that. They saw the firearm, and he was then arrested outside the home without the farm. So the reasonable inferences that the firearm is inside. Then they have multiple, uh, people coming out of the house that at least one outside the defendant Goodino is in that were at least known to the deputies by name or by association. And, uh, they had heard the, uh, commotion inside the house. Now, going to a defendant named Defendant Nunez Sr. Defendant Nunez's father, Nunez Sr. said, yes, there was a, uh, a site to the to the record that he did not know, or he could not. Defendant Goodino was not allowed in the house. There's also, he said that originally, he said the defendant Goodino was not in the house. Then he said that he was in the house, but he couldn't give the assurances that no one else was in the home. All the deputies know at the time is that there is likely a firearm in there that the people who are exiting are known gang members in the same gang as Defendant Goodino, and that there is at least conflicting evidence or statements about who was else inside the home from the homeowner. Um, and unfortunately, as the record shows, he did not know. He could not recall the exact wording of what either, uh, Nunez Sr. or Rivera said, but they heard commotion going further back into the house. And although they were his father and Rivera, who came out of the home, it stands to reason that those who would pose the strongest danger to the arresting officers on the scene are the ones who would not be compliant, who would be hiding inside the home where they know there are firearm where they could have stashed it. And if I could, I would like to go to inevitable discovery as well, because I think that there are, uh, strong factors that support that as well. Preponderance of the evidence easily shows that that it would have been inevitably discovered. And this is a clearly erroneous standard. Uh, where the district? Well, I think your case is London and that in the United States be London. We noted that the inevitable discovery exception does not apply when officers have probable cause to apply for a warrant but simply failed to do so. Assuming for the sake of argument that we disagree with you that there was an imminent threat to officer safety, what prevented the officers from obtaining a warrant before searching Nunez's house here? Well, I think the rest of that quote in London is, uh, if evidence were admitted, not withstanding the officer's unexcused failure to obtain a warrant simply because probable cause existed and there would never be any reason for officers to seek a warrant. Here, the officers did seek a warrant. They did obtain a warrant, and not only did the district court favorably discussed that a warrant would have been obtained even without the information from the protective sweep, but that that warrant itself, I think, is about 13 paragraphs long. It's at your site to a three. Only one and a half of those paragraphs actually sites to anything that was found during the and even further, the, uh, the warrant search found additional evidence showing sorry, additional firearm evidence, including ammunition, showing that they only did a cursory review, not a full search warrant, uh, search of the house. Well, in London, in London, did the officers know they were going to arrest someone? Were they going out specifically to arrest someone? Does that distinguish it from this case where they're driving and then this saga unfolds? It's a great point, Your Honor. It's unclear to me from that case exactly what they were going to do. But the court in London said that they did have probable cause, at least to arrest and to obtain an arrest warrant before arriving on the scene. And then on the scene, they're the ones law enforcement are the ones who are creating the exigent circumstances by knocking on the door. And then, you know, everything that followed here, the officers certainly were not the ones who created the accident circumstances and did not have probable cause to arrest Defendant Godino before he ran in the house or, um, you know, before he fled the house and certainly not to search the home. It's all related to exactly what happened. And then the danger that's emanating from the home. Well, were they on routine patrol or just kind of or or were they looking for Godino? Or what was that? They were on routine patrol. That's certainly established in the record. However, they knew that Godino was on parole or probation and had had a run in with him weeks before. However, they were not searching for him. And, uh, they state in the affidavit that they and in the report that the officers were going to stop him to simply have a search, a probation or parole search based on the fact that they knew he was on probation and that they had seen him with a firearm and flee just a few weeks before this incident. Okay, you're in overtime. But let me ask my colleagues. Do they have questions? So no more questions. Thank you. Thank you so much. Honors. All right. You have two minutes for rebuttal. Thank you, Your Honor. So I just like to make three quick points. So there was no lawful basis to enter the Nunez residence. If it was based on an arrest, the rest either had to occur inside the home or just outside the home. But here we have it occurring a few blocks away. There's no case that this in this court that either I found or my friend has found where that's been allowed. If it was based on something else, there was no consent. There was no other basis for the warrant or warrant requirement exception to be asserted here. That's all abandoned. So without that, we can't go any further. So the second point I wanna quickly make is about reasonable suspicion and the men who were on the scene. I think it's important to remember that all of those men were detained. They were compliant. In fact, Mr. Nunez Sr. and Mr. Rivera were released into the field because the deputies found that they weren't involved in the incident. They had no reason to hold them or even arrest them. So I think it's very hard just to premise this on the mere fact that they were there. It turns the test into, instead of being one about specific and articulable facts, about suspicions and hunches. And that's exactly what Bowie says that you can't do. And then the last point I just wanna quickly make is on inevitable discovery. It's not just London. There's 30 years of case law from this court holding that this is a bright line rule. It goes all the way back to this court's decision in Camus, Young, Riley, Mejia, Echigoian, and my friend doesn't address any of those cases. In any event, in London, we have the exact same fact pattern as we have here. There was a protective sweep. The government actually argued in that case that inevitable discovery should apply because it was just a limited protective sweep, and the officers quickly got a warrant. And the court still said that inevitable discovery does not apply. So unless there are any further questions, Your Honor, I'll submit on that. There don't appear to be. Thank you both for being friendly. Thank you. We... People always say that criminal lawyers are some of the most civil, and I think you've both been an example of that, and we appreciate it. Thank you. Alright, this matter will stand submitted.
judges: CALLAHAN, THOMAS, Humetewa